IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| IN RE: BETH RENEE MILLER, | ) | |
| Debtor | ) | CASE NO. 05-74185 |
|  | ) | |
|  | ) | CHAPTER 13 |
|  | ) | |

## MEMORANDUM DECISION

The matter before the Court is the Debtor's Motion to Reinstate Case, which is opposed by the chapter 13 Trustee. For the reasons noted below, such Motion is denied.

## FINDINGS OF FACT

The Debtor, Beth Renee Miller, filed her petition under chapter 13 of the Bankruptcy Code in this Court on October 4, 2005, just a few days prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). A chapter 13 Plan proposed by the Debtor and filed on October 31, 2005 was confirmed at a hearing held on January 23, 2006, after which an order of confirmation was entered the following day. This Plan provided for total payments to the Trustee of $21,600 by means of thirty six monthly payments of $600 each. Thereafter, on August 18, 2006 the Trustee filed a motion to dismiss due to an asserted delinquency in payments amounting to $2,400, equivalent to four missed monthly payments. This motion was resolved by the Debtor filing on September 20, 2006 a new chapter 13 Plan, which was confirmed on November 6, 2006. The effect of this Plan was to extend the length of the Plan so that the same number of $600 payments would be accomplished over a period of forty one months. On January 30, 2007 the Trustee filed a second motion to dismiss, asserting a delinquency of $1,800, but she later withdrew such motion on the date it was

1

scheduled for a hearing by an order she submitted to the Court which was entered on March 12. About three months later, specifically on June 8, 2007, the Trustee filed her third motion to dismiss. This one asserted a delinquency, calculated to the date of the noticed hearing on August 6, of $3,000, which would amount to five months of missed payments. On June 22 the Debtor filed another Amended Plan to deal with her default. This one proposed to add to the total of $6,600 payments already made (eleven months of payments of $600 each) forty two additional monthly payments at a reduced payment amount of $375 each beginning in July 2007, lengthening the term of the Plan to the maximum permissible length of sixty months from the date of original confirmation, and resulting in proposed total payments of $22,350, a slight increase above the $21,600 of total payments which had been provided for in the two prior Plans. This Plan was set for its confirmation hearing on August 6, the same date as the Trustee's pending motion to dismiss. Although the Debtor did not appear at that hearing, her counsel did so and advised the Court that the proposed amended Plan had been prepared in conjunction with the Debtor, who knew that she needed to make payment but had not been in recent contact with counsel, and therefore the latter could offer no response to the Trustee's assertion that the Debtor had failed to make the $375 payment due on her proposed new Plan during July. As a result, the Trustee's motion was granted at that hearing and a dismissal order was entered on the same date, August 6, 2007. Twenty one days later, on August 27, 2007, the Debtor, by counsel, filed the Motion to Reinstate Case now before the Court and set it for hearing on September 24, 2007.

  At the scheduled time both the Debtor and her counsel appeared. The Trustee stated that she opposed the Motion. The Court *sua sponte* questioned its authority to grant the Motion in light of the fact that it wasn't filed within ten days of the date of entry of the dismissal.

At that time counsel for the Debtor asserted that because the case had not been closed, there was authority for the proposition that the case could be reinstated without any necessity of vacating the dismissal order. Counsel stated that she wanted the Court to hear the Debtor's explanation about what had occurred as providing good cause to reinstate the previously confirmed Plan and allow her to cure the deficiency under such Plan. The Court granted this request and the Debtor testified in response to questions from her own counsel, after which she was questioned by both the Trustee and the Court.

      The Debtor testified that she understood as a result of some communication with her counsel's office at some point that sending in payment to cure the deficiency would resolve the Trustee's motion to dismiss based on payment default. Although the Debtor claimed in her Motion to Reinstate as well as her testimony at the hearing that she had thought her payment was going to come out of a wage deduction from her paycheck, a review of the case docket fails to disclose the entry of any wage deduction order. Accordingly, the basis for the Debtor's claimed misunderstanding is not apparent. After realizing that her wage deduction had not been taken out of her paycheck, Ms. Miller testified that she mailed a money order to cure her default to the Trustee's designated lockbox address prior to what she thought was the date of the scheduled hearing, assumed that would take of the problem, and left town for two weeks for training associated with a new job she was taking with her employer, Cox Communications, without contacting her counsel or the Trustee. She further testified that she thought that the hearing on the Trustee's Motion was scheduled for Friday, August 10, rather than its actual date of Monday, August 6, and thought that there was plenty of time for the payment to arrive before the hearing date. Although she initially testified in response to questioning from the Court that she had been

paid by her employer on the preceding Friday, August 3, and had obtained a money order and sent it that same day to the Trustee's address, when presented by the Trustee with a copy of the money order in question, which indicated a purchase date of Tuesday, August 7, she concluded that her earlier testimony must have been mistaken and that the indicated purchase date must be correct.  She further testified that she thought she purchased the money order at the post office because she always purchases her money orders at the post office or the grocery store, but could not recall where she had purchased this particular one.  Because the money order was not received until after the case had been dismissed, the Trustee returned it to the Debtor.  At the hearing upon her motion, Ms. Miller testified that she had not returned home from her job training until Sunday night, August 19, after which she reviewed the mail which had accumulated in her absence and learned that her case had been dismissed. She then contacted her counsel and told her what had happened, after which counsel filed the pending motion on August 27, 2007.  In partial explanation of her payment problems with her confirmed chapter 13 Plans, Ms. Miller testified that she was the sole custodial parent of a young son, who had a rare medical condition which had been difficult to diagnose and which required time and travel to deal with his problem, but whose condition finally had been correctly diagnosed and that therefore she was in a much better position to proceed successfully with her case.

      At the conclusion of the hearing, the Court took the Motion under advisement and invited counsel to submit the case authority alluded to during the hearing which would permit the Court to reinstate her chapter 13 Plan without having to vacate the August 6 dismissal order. Counsel did so the following day[1] but advised the Court that it did not contain the holding which

---

[1] The decision in question is *In re Singleton*, 358 B.R. 253 (D.S.C. 2006).

she had recalled and agreed that it would be necessary to vacate the dismissal order. She offered that authority to do that existed in Federal Rule of Civil Procedure 60(b)(1) on the ground of "mistake" and (b)(6) on the ground of "any other reason justifying relief from the operation of the judgment."

CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The determination of a motion to reinstate a case by vacating its dismissal order is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b) because inherent in the jurisdiction to entertain a bankruptcy case in the first place is the power to determine either to dismiss a case, or not to do so, or to permit a dismissal order to be vacated so that the case might continue.

Federal Bankruptcy Rule 9024 incorporates Federal Rule of Civil Procedure 60 into the bankruptcy court's procedure in offering relief from a judgment or order. *See* Fed. R. Bankr. P. 9024. Rule 60(b) offers six reasons to grant relief from a final judgment or order including "mistake, inadvertence, surprise, or excusable neglect" and "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(1) & (6). Ms. Miller, by means of the post-hearing argument of her counsel, requests this Court to grant relief from its Order dismissing her case on August 6, 2007 based on the alternative grounds of "mistake" or "any other reason justifying relief." The Court will also consider the applicability of "excusable neglect" as providing a possible ground for relief from the dismissal order. The movant under Rule 60(b) has the burden of proof to establish the existence of some ground for relief. *Stokors*

*S.A. v. Morrison*, 147 F.3d 759, 761 (8th Cir. 1998) (quoting *United States v. Denham*, 817 F.2d 1307, 1309 (8th Cir. 1987)).

First, an order of dismissal may be vacated due to "mistake" under Rule 60(b)(1), but the Federal Rules do not define what encompasses a "mistake." *Ellingsworth v. Chrysler*, 665 F.2d 180 (7th Cir. 1981), holds that when there was confusion as to when the trial would be set, no written notice was sent to the defendant or his counsel and no attempt was made to contact the defendant or his counsel for the trial, then the defendant's failure to attend the trial was a "mistake" satisfying Rule 60(b)(1). *Id*. at 184. In the *Ellingsworth* case, both defendant and defendant's counsel failed to appear for a trial and no one made an effort to notify either of them of the pending proceeding. This holding, however, is not helpful to Ms. Miller because her attendance was not mandatory to stave off the dismissal of her case and her counsel was actually in court representing Ms. Miller. Counsel stated in court that she had not heard from Ms. Miller before the hearing and had no evidence on which to oppose the motion to dismiss, which is distinguishable from the facts in *Ellingsworth*. Even more importantly, both the Debtor and her counsel were properly notified by the Court and the chapter 13 Trustee of the scheduled hearings on both the Trustee's motion and the confirmation of the Debtor's amended Plan. The Debtor's failure to contact her own counsel prior to the scheduled hearing may have been an error in judgment, but it was intentional on her part, not a mistake. *See Puckett v. Beaver (In re Beaver)*, 79 B.R. 706, 709 (Bankr. S.D. Ohio 1987) ("[R]elevant case law indicates that conscious choices which a Court finds to be in error do not establish the kind of 'mistake' envisioned by Fed.R.Civ.P. 60(b)(1)." (citing *Federal's Inc. v. Edmonton Investment Co.*, 555 F.2d 577 (6th Cir. 1977); *Dal International Trading Co. v. Sword Line, Inc.*, 286 F.2d 523 (2d Cir. 1961)). Her

misunderstanding as to the date of not just one, but two distinct hearings, albeit on the same date, was in some sense of the word a mistake, but it was due entirely to her own neglect or negligence, not the fault of any other individual, in contrast to the facts and circumstances presented in *Ellingsworth, supra,* and is not the type of "mistake" contemplated by Rule 60 to permit relief from an order which a party wishes to challenge out of time. Therefore, Ms. Miller's failure to attend the hearings does not rise to the level of mistake necessary to grant Rule 60(b)(1) relief.

Second, Ms. Miller relies on Rule 60(b)(6), "any other reason justifying relief," to reinstate her Chapter 13 case, but this also fails. In order to rely on Rule 60(b)(6), a debtor must not qualify for relief under 60(b)(1) through (b)(5), *Liljeberg v. Health Services Corp.*, 486 U.S. 847, 863 (1988), and must actually make a showing of how the facts fail to fall into the other five categories. In doing so, the moving party actually shows that extraordinary circumstances exist to justify granting relief. Moreover, The United States Supreme Court has stated that "[t]o justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in delay." *Pioneer Investment Services, Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). This position is stated clearly in *Moore's Federal Practice*, which says that in "a vast majority of cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault for . . . her predicament; that is, the movant was unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought." 12 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 60.75[3][b] (3d ed. 2003).

In relying on her own mistakes as to the timing of her court date and failure to

make the Plan payment required under her June 22nd proposed plan when due, Ms. Miller is not without fault so as to rely on 60(b)(6). Ms. Miller's predicament, unfortunately, is the cumulative result of her failures to make multiple payments due under two confirmed Plans, which prompted the Trustee's final Motion to Show Cause, her further failure to tender payment on time pursuant to her June 22nd Plan, and her "trust to luck" approach of not contacting her own attorney either shortly before or promptly after the scheduled hearings, irrespective of her confusion about their actual date, and not by reason of causes wholly beyond her control. Therefore, Ms. Miller cannot rely on Rule 60(b)(6) to vacate the dismissal order and reinstate her case.

Under Rule 60(b)(1), a court may also grant relief from an order on the ground of "excusable neglect." Although Ms. Miller has not advanced any argument that this Court ought to vacate the dismissal order due to "excusable neglect," the Court, nevertheless, will consider such ground as well because it constitutes in the Court's opinion the closest fit to the facts and circumstances presented here.

The Supreme Court of the United States explored the proper meaning of the term "excusable neglect" in its holding in the much cited case of *Pioneer Investment Services, Co. v. Brunswick Assocs. Ltd. P'ship*. Prior to that decision the lower courts[2] had reached differing

---

[2] The Fourth Circuit had previously considered the ground of "excusable neglect" in its decision in *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126 (4th Cir. 1992), which held that a movant may not obtain relief from judgment for excusable neglect under Rule 60(b)(1) if the movant is at fault. *Id*. at 132. In *Home Port Rentals*, the defendant agreed to a nonsuit of a prior case and agreed to submit, along with the other defendants, to the court's jurisdiction. *Id.* at 128. However, when the new case was filed, neither the plaintiff's counsel nor the defendant's counsel in the nonsuited case could find the defendant. *Id*. at 128-29. The court ultimately held that the default judgment against the defendant could not be vacated by a Rule 60(b)(1) motion based on excusable neglect because the defendant intentionally made himself unavailable

conclusions as to what degree a litigant could be at fault and still qualify for consideration of having that "neglect" excused. *See id.* at 387 n.3 (discussing such contrasting decisions). In *Pioneer*, the Court interpreted Bankruptcy Rule 9006(b)(1), which permits late filings due to missing the original deadline because of "excusable neglect." *Id*. at 383. Justice White, in delivering the opinion of the Court, discussed Rule 60(b) specifically and made a distinction between whether the movant was or was not at fault. Unlike other Federal Rules that allow for relief due to "excusable neglect," Rule 60(b) has two sections that allow for relief for excusable neglect: 1. Rule 60(b)(1) allows for relief within one-year of a court's order; and 2. Rule 60(b)(6) allows relief for "other reasons" which could include "excusable neglect" if the delay is greater than one year and the movant is free from fault. *See id*. at 393. The Court explained that a movant has to show "extraordinary circumstances" to prevail under 60(b)(6), and this suggests that the movant be free from fault. *Id*. The Court reasoned that "[i]f the party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable." *Id.* The Court then said that the determination of whether neglect is excusable is an equitable inquiry that permits courts to accept late filings due to inadvertence, mistake or carelessness, as well as circumstances beyond the party's control. *Id.* at 388. Importantly, the Court held that whether the neglect is excusable or not is a determination that must be made on a case-by-case basis. *Id.* at 395. To help determine what circumstances would rise to excusable neglect, the Court laid out some factors to consider, which include prejudice to

---

thereby making the default judgment his fault. *Id*. at 132. Because purposeful conduct intended to frustrate the process of the court could hardly be considered neglect which could be deemed "excusable", this decision is not helpful in analyzing what degree of unintentional neglect ought to be excused by a court.

the debtor, length of the delay and its impact on the proceedings, reason for the delay and whether the movant acted in good faith. *Id*.

This Court now turns to consideration of the facts and circumstances of this case in light of the factors set forth in *Pioneer*. It cannot be denied that some of these factors weigh in the Debtor's favor. The Motion was filed within the same month in which the dismissal order was entered and within ten days of the Debtor's learning of the dismissal of her case. Therefore, the length of the delay was relatively short and within the one-year time limit that allows the moving party to be partly at fault. While the dismissal of a chapter 13 case and its subsequent reinstatement are clearly disruptive to the smooth functioning of both the chapter 13 Trustee's office and this Court's clerk's office, the impact of such an occurrence cannot fairly be deemed to have a substantial negative impact upon either of them or the administration of the Debtor's case. The underlying failures to make payments under a confirmed Plan and to take prompt action to deal with such defaults before precipitating the chapter 13 Trustee's motion to dismiss, however, clearly are disruptive to all parties in interest concerned with the case. Similarly, no suggestion of bad faith on the Debtor's part has been made or seems warranted under the facts presented here, that is to say, her conduct is not indicative of any effort or intent on her part to manipulate her creditors or to pursue some other ulterior purpose. In order to determine whether Ms. Miller's neglect in this matter was "excusable," the Court will also explore the issues of reasons for the delay, prejudice to the Debtor, and prejudice to the creditors.

The Debtor failed to make a timely payment during the month of July under the plan proposed on June 22nd because she claims that she expected it to be taken out of her paycheck by a wage deduction. However, the docket for the case indicates that no wage

10

deduction order was ever entered by the Court and the Debtor offered no testimony to support this belief, such as that she had authorized and requested her employer in writing to make a deduction from her paycheck to send to the chapter 13 trustee to cover her Plan payment. It is not harsh, but simply accurate, to note that the Debtor would have known, or at least reasonably should have known, immediately upon the receipt of her July paychecks that no amount was being withheld.

Furthermore, the Debtor failed to check with her counsel in advance of the hearing or to advise her counsel that she would be out of town for two weeks, didn't take the trouble to check the notices she had received to make certain of the hearing date, didn't remit payment even after July in time for its receipt by the Trustee before the hearing, and didn't make any arrangements to have a friend or relative check her mail during her two week absence for legal or other important communications. All of these choices or oversights were in keeping with her prior failures to make timely payments under her confirmed Plan or take any action to deal with such defaults until the Trustee had filed multiple motions to dismiss. While the Court on a personal basis can empathize with the various life stresses with which the Debtor was dealing during this time, especially the needs of her young son, understandably uppermost in her thoughts, these pressures were not such that they reasonably prevented her from dealing with the problems and issues in her bankruptcy case in a timely manner. It is common that many bankruptcy debtors have serious medical issues and other personal problems, which may not only be a substantial cause of their financial distress in the first place, but also seriously impede their efforts to deal with such distress. It can often be difficult, as it is here, to draw the proper line between compassion and understanding of a bankruptcy debtor's problems and their effect

upon the handling of his or her case, on the one hand, and, on the other, acquiescing in and therefore condoning a persistent failure to meet the obligations such a debtor assumes to his or her creditors and the court when the relief and protections provided by that court under the Bankruptcy Code are sought.

The failure to grant the Debtor's Motion does not shut the bankruptcy court doors to her, which would be quite prejudicial to the Debtor, but simply denies her attempt to revive her previously dismissed case. The Debtor may file a new case, which, hopefully, if she chooses to do so, she will handle with more care than she has her prior case. Accordingly, weighing the equities here, the Debtor will not suffer anything like the consequences resulting to a litigant from other much more severe actions such as, refusing to re-open a default judgment to which the litigant had a good defense on the merits[3], or precluding the litigant from introducing witnesses or other evidence in his or her behalf at trial.[4] Although Debtor's counsel asserted that creditors would be better off by a continuation of the dismissed case rather than the filing of a new case, that position is not supported by any actual evidence or specific explanation as to why such would be the case. While no creditor has objected to the Debtor's Motion, the Court believes that it has inadequate information before it to determine reliably what ultimate

---

[3] *See Cacevic v. City of Hazel Park*, 226 F.3d 483 (6th Cir. 2000) (holding that the plaintiff's failure to file an answer to the defendant's summary judgment motion and the granting of such motion may be reviewed on a Rule 60(b) motion, but the plaintiff's defenses and evidence against the granting of the summary judgment motion will not be considered).

[4] *See Burger v. Mays*, 176 F.R.D. 153 (E.D. Pa. 1997) (holding that carelessness by a party's counsel of writing down the hearing date for the wrong day that resulted in an uncontested motion in limine being granted for the other side and other inattention to detail did not amount to the pattern of conduct necessary to make a single instance of neglect inexcusable).

comparative advantage or disadvantage to the creditors would result from granting or denying the Motion. That would require a prediction of future events which would be speculative, to say the least. It may be observed correctly, however, that the dismissal of the case reinstated the creditors' pre-bankruptcy rights pursuant to 11 U.S.C. § 349, subject to credit for any payments received by them under the Debtor's previously confirmed Plans. To grant the Debtor's Motion, therefore, would change the currently existing positions of the parties by reversing the reinstatement of such rights which the case dismissal effected.

In all good conscience the cumulative effect of a series of occurrences evidencing the Debtor's neglect of her responsibilities in this case is such that this Court cannot fairly deem such neglect excusable under the principles set forth in *Pioneer*. Therefore, because the Court concludes that the Debtor has not met her burden of proof in establishing "excusable neglect," the dismissal order cannot be vacated under Rule 60(b)(1) on this ground.

## CONCLUSION

Based upon the foregoing, Ms. Miller cannot rely on Bankruptcy Rule 9024 incorporating Fed. R. Civ. P. 60(b)(1) and (6) to provide good cause to vacate the dismissal order entered on August 6, 2007 and reinstate her case. An order to such effect will be entered contemporaneously with this written explanation for the Court's ruling.

This 23rd day of October, 2007.

_____
UNITED STATES BANKRUPTCY JUDGE